UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUCAS PIERCE,

               Plaintiff,

v.                                                                  9:06-CV-1290
                                                                    (LEK/GHL)

DAVE MONELL, Lieutenant, Tioga County Jail;
JESSIE HOWE, Corrections Officer, Tioga
County Jail; and NATE MARSH, Sergeant, Tioga
County Jail,

               Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

LUCAS PIERCE, 04-B-1486
  Plaintiff, *Pro Se*
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

OFFICE OF FRANK W. MILLER                 FRANK W. MILLER, ESQ.
  Counsel for Defendants
6575 Kirkville Road
East Syracuse, NY 13057

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This action has been referred to me for Report and Recommendation by the Honorable

Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(c) of the Local Rules of Practice for this Court.  Generally, in this *pro se* civil rights

action brought under 42 U.S.C. § 1983, Lucas Pierce ("Plaintiff"), currently incarcerated by the

New York State Department of Correctional Services, alleges that, while he was an inmate at the

Tioga County Jail ("the Jail"), three employees of the Jail--Lieutenant Dave Monell, Corrections Officer Jessie Howe, and Sergeant Nate Marsh ("Defendants")–violated his rights under the First and Fourteenth Amendments by negligently losing, or perhaps intentionally taking, his property and then retaliating against him for complaining about that property deprivation.  (Dkt. No. 1.) Currently pending is Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 6.)  For the reasons stated below, I recommend that Defendants' motion be granted in part and denied in part.

## I.    BACKGROUND

Liberally construing Plaintiff's *pro se* civil rights Complaint as I must, I read that Complaint as alleging that, while Plaintiff was an inmate at the Tioga County Jail during an unspecified time period, Defendants (1) "took close to $1,500.00 . . . worth of jewelry" from him without recording the jewelry in the Jail's "property log" upon his admission to the Jail, did not return the jewelry to him upon his discharge from the Jail, and refused to  compensate him for the loss of the jewelry despite his repeated requests for such compensation, in violation of the Fourteenth Amendment, and (2) retaliated against him by "threaten[ing] his life" and threatening to file "criminal charges" against him when he exercised his right, or attempted to exercise his right, under the First Amendment to complain about the deprivation of property through "speak[ing] his mind" to Defendants and through writing to a "third party" about the deprivation. (Dkt. No. 1, ¶¶ 6, 7.)

In their memorandum of law, Defendants assert four arguments in favor of dismissal of Plaintiff's Complaint  pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure: (1) that Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that he

exhausted his administrative remedies before filing this action in federal court; (2) that Plaintiff's allegations of threats by Defendants fail to state a claim since the allegations make no mention of physical injury, nor do the allegations even state that the threatened actions against Plaintiff were not actually taken by Defendants; (3) that Plaintiff's allegations that Defendants deprived him of his property at most state a claim for negligence by Defendants, which is not actionable under 42 U.S.C. § 1983; (4) that any claims that Plaintiff has attempted to assert against Defendants under New York State law are barred by the applicable statute of limitations, set forth in New York General Municipal Law §§ 50-e, 50-i.  (Dkt. No. 6, Part 4.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Effect of Plaintiff's Failure to Respond to Defendants' Motion

Defendants filed their motion to dismiss on February 20, 2007.  (Dkt. No. 6.)  In light of Plaintiff's special status as a *pro se* civil rights litigant, on April 12, 2007, and May 22, 2007, I *sua sponte* (1) twice reminded Plaintiff that he had not yet responded to Defendants' motion to dismiss, (2) twice granted Plaintiff an extension of time in which to respond, first until May 11, 2007, and then until June 22, 2007, and (3) advised Plaintiff that his failure to so respond would be deemed consent to the relief requested in Defendants' motion.  (Dkt. Nos. 10, 12.)  Still, Plaintiff did not respond to Defendants' motion to dismiss.

"Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as required by this Rule shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause be shown." N.D.N.Y. L.R. 7.1(b)(3).

3

Here, Defendants' motion to dismiss has been properly filed, and Plaintiff has failed to oppose it (despite being warned of the possible consequences of that failure). Therefore, the next issue before the Court is whether Plaintiff has shown good cause as to why his failure to oppose Defendants' motion should not be deemed as "consent" to the granting of the motion.

The closest Plaintiff comes to showing such cause is when he asserts, in his two verified applications for the appointment of counsel, that (1) he is "unable to fully complete paperwork on [his] own due to [a] lack of knowledge," (2) his incarceration in his correctional facility's Special Housing Unit has "greatly limit[ed] his ability to litigate" this action due in part to his limited access to the facility's law library, (3) his "'mental' discibility [sic]" has inhibited his ability to respond to Defendants' motion, and (4) "his limited knowledge [of] law" has inhibited his ability to "investigate his case with regard to certain exhibits" filed by Defendants, and his ability to obtain "medical records" that are material to Defendants' motion. (Dkt. No. 9, Part 1, ¶ [C]; Dkt. No. 11, ¶¶ 1, 3, 4.)

After carefully considering the matter, I find that these sworn assertions by Plaintiff do not constitute good cause excusing his failure to oppose Defendants' motion. As an initial matter, I find that, rather than filing his second motion for the appointment of counsel (which totaled eight pages in length and included an affidavit of another prisoner), Plaintiff could well have simply responded to Defendants' motion. Moreover, Plaintiff needed no ability to "investigate his case" in order to respond to Defendants' motion, since the legal standard governing that motion does not permit the consideration of extrinsic evidence such as documents obtained through discovery.

However, I note that, in the cover letter to his first motion for the appointment of counsel,

Plaintiff advises the Court that he is no longer incarcerated at Auburn Correctional Facility but at

Southport Correctional Facility.  (Dkt. No. 9, Part 2.)  This change of address is also indicated

implicitly in Plaintiff's second motion for the appointment of counsel.  (Dkt. No. 11 at 4-6, 8.)

The problem is that, because of the somewhat inconspicuous nature of this change-of-address

notification, the change of address was not reflected on the docket when the Court twice

extended Plaintiff's time in which to respond to Defendants' motion, and notified Plaintiff that

his failure to so respond would be deemed consent to the relief requested in Defendants' motion.

(Dkt. Nos. 10, 12.)

Ordinarily, an uncertainty as to whether a plaintiff received such communications from

the Court might undermine a finding that the plaintiff knowingly and voluntarily chose not to

respond to an opponent's motion.  However, here, I find no such uncertainty since it appears that

mail addressed to Plaintiff at Auburn Correctional Facility has been forwarded to Plaintiff at

Southport Correctional Facility.  I base this conclusion on several pieces of evidence.[1]

Therefore, the final issue before the Court is whether Defendants have met their burden to

demonstrate entitlement to dismissal for failure to state a claim, under the Federal Rules of Civil

---

[1] This evidence includes the following: (1) the fact that none of the Court's correspondence to Plaintiff at Auburn Correctional Facility has been returned to the Court as undeliverable (which is usually what happens when a prisoner has been transferred from a correctional facility without leaving a forwarding address); (2) the fact that, on or about February 9, 2007, a letter from a lawyer addressed to Plaintiff "c/o Auburn Correctional Facility" apparently reached Plaintiff at Southport Correctional Facility; and (3) the fact that an affidavit of a fellow prisoner, submitted by Plaintiff, indicates that Plaintiff received a copy of the Court's Order of April 12, 2007, despite the fact that the Order was sent to Auburn Correctional Facility while Plaintiff was actually incarcerated at Southport Correctional Facility.  (Dkt. No. 9, Part 1 at 3; Dkt. No. 11 at 7.)

Procedure and the Local Rules of Practice for this Court.[2]  The Court's consideration of whether

a movant has met its burden "to demonstrate entitlement" to the relief requested under Local

Rule 7.1(b)(3) is a more limited endeavor than a consideration of a contested motion requesting

such relief.[3]  However, such a consideration is not merely a perfunctory step but involves a

review of the merits of Defendants' motion.[4]  Obviously, the Court is not going to grant a motion

that, on its face, lacks merit (especially when the motion requests dismissal of the complaint of a

*pro se* civil rights litigant, who is generally afforded special solicitude due to his lack of

familiarity with legal procedure and the serious nature of his claims).

### B.      Recently Revised Legal Standard Governing Motions to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to

dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ.

---

[2]      *See* Fed. R. Civ. P. 12(b)(6) (permitting defendant to assert defense of failure to state a claim by motion); Fed. R. Civ. P. 7(b)(1) (requiring motions to, *inter alia*, "state with particularity the grounds therefor"); L.R. 7.1(a) (requiring all motions to dismiss to include a memorandum of law containing citations to legal authorities).

[3]      *See, e.g.*, *Hernandez v. Nash*, 00-CV-1564, 2003 U.S. Dist. LEXIS 16258, at *7-8 (N.D.N.Y. Sept. 10, 2003) (Sharpe, M.J.) (before an unopposed motion to dismiss may be granted under Local Rule 7.1[b][3], "the court must review the motion to determine whether it is *facially meritorious*") (emphasis added) (citations omitted); *Race Safe Sys., Inc. v. Indy Racing League*, 251 F. Supp.2d 1106, 1109-1110 (N.D.N.Y. 2003) (Munson, J.) (reviewing whether record contradicted defendant's arguments, and whether record supported plaintiff's claims, in deciding unopposed motion to dismiss, under Local Rule 7.1[b][3]); *see also Wilmer v. Torian*, 96-CV-1269, 1997 U.S. Dist. LEXIS 16345, at *2 (N.D.N.Y. Aug. 29, 1997) (Hurd, M.J.) (applying prior version of Rule 7.1[b][3], but recommending dismissal because of plaintiff's failure to respond to motion to dismiss *and* the reasons set forth in defendants' motion papers)*, adopted by* 1997 U.S. Dist. LEXIS 16340, at *2 (N.D.N.Y. Oct. 14, 1997) (Pooler, J.); *accord, Carter v. Superintendent Montello*, 95-CV-989, 1996 U.S. Dist. LEXIS 15072, at *3 (N.D.N.Y. Aug. 27, 1996) (Hurd, M.J.), *adopted by* 983 F. Supp. 595 (N.D.N.Y. 1996) (Pooler, J.).

[4]      *See, supra*, notes 2 and 3 of this Report-Recommendation.

P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or

both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[5] or

(2) a challenge to the legal cognizability of the claim.[6]

      Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Such a statement must

---

     [5]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

     [6]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[7]  The purpose of this rule is to "facilitate a proper decision on the merits."[8]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[9]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[10]  However, it is well established that even this liberal notice pleading standard "has its limits."[11]  As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice

---

[7]     *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[8]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[9]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[10]    *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[11]    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

pleading standard.[12]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-1969 (2007).[13]  Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim.  *Id.* at 1965-1974.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise

---

[12]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[13]     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."  *Twombly*, 127 S. Ct. at 1969.

a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id*.

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[14]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[15]  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."[16]

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[17]  However, "all normal rules of pleading

---

[14]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[15]     *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[16]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[17]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

are not absolutely suspended."[18]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[19]

Finally, it should be remembered that Rule 12(b)(6) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings.[20]  However, of course, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss),[21] and

---

[18]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord, Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[19]      *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[20]      *See* Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) o dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

[21]      *See Chambers v. Time Warner*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.*, 263, F.3d 10, 13, n.3 (2d Cir. 2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996) (a document that is "integral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases];

(2) any documents provided by the plaintiff in opposition to defendants' motion to dismiss, to the extent those documents are consistent with the allegations in the complaint.[22]

## III.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

After reading Defendants' memorandum of law, and reviewing the applicable case law, I have no choice but to find that Defendants' exhaustion argument, on its face, lacks merit.  (*See* Dkt. No. 6, Part 4, at 2-3 [Defs.' Mem. of Law].)

As an initial matter, to the extent that Defendants, during their exhaustion argument, rely on evidence outside the four corners of Plaintiff's Complaint, they straddle, or outright cross, the line between a Rule 12(b)(6) analysis and a Rule 56 analysis.  (*See id.* at 2 [relying on the

---

*Harsco Corp. v. Segui*, 91 F.3d 337, 341, n.1 (2d Cir. 1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint.  We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.");  *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) ("We . . . decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

[22]     "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord*, 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

affidavit of Captain Paul Rhodes].)  As explained above in Part II.B. of this Report-Recommendation, in certain circumstances, the Court can rely on documents not attached to a plaintiff's complaint without converting a motion to dismiss into a motion for summary judgment.  One of those circumstances is when the plaintiff's complaint relies on or references a document provided by the defendant in support of its motion to dismiss.[23]

Here, Defendants implicitly ask the Court, when evaluating Defendants' exhaustion argument, to consider (1) an excerpt of the "Tioga County Inmate Rule Book" setting forth the Jail's inmate grievance procedure, (2) four inmate grievance forms authored by Plaintiff, complaining of inadequate medical care, and (3) a letter dated September 18, 2006, from Plaintiff to one Patricia Scott (a sergeant at Tioga County Jail), complaining about the "lost and/or stolen property" at issue in this action.

The problem with the four inmate grievance forms authored by Plaintiff is that they are nowhere relied on, or referenced, by Plaintiff in his Complaint.  (*See generally* Dkt. No. 1.) Similarly, the problem with the Jail's inmate grievance procedure is that it is nowhere relied on, or referenced, by Plaintiff in his Complaint.  (*See id*.)[24]  As a result, the Court cannot consider these particular extrinsic documents without converting Defendants' motion to dismiss into a motion for summary judgment.  (This I decline to do, and I urge the Court to decline to do.

---

[23]     *See*, *supra*, note 21 of this Report-Recommendation.

[24]     The closest that Plaintiff comes, in his Complaint, to *conceivably* relying on, or referencing, that procedure is when, in response to the question "Why did you choose to not present the facts relating to your complaint in the prison's grievance program?" Plaintiff stated, "The facts of the complaint do not matter in my current facility [i.e., Auburn Correctional Facility]."  (*Id*. at ¶ 4[c].)  However, clearly, this statement is not an attempt to rely on, or reference, the Tioga County Jail's inmate grievance procedure.

13

Plaintiff has not been given the required notice of such a conversion of Defendants' motion, nor

has he been given an opportunity to present evidence to create an issue of fact, nor has he even

been given an attempt to conduct discovery in this action.)

I reach a different conclusion, however, with regard to Plaintiff's letter of September 18,

2006, to Sergeant Scott about the "lost and/or stolen property" at issue in this action. This is

because, in his Complaint, Plaintiff alleges, "After several request[s] . . . to a third party

[regarding my lost or stolen property,] I had my life threaten[e]d and had criminal charges

threatened for writing to [a] third party [sic]." (*Id.* at ¶ 7.) Admittedly, I have some uncertainty

as to whether this "request . . . to a third party" is a reference to this letter.[25] However, the letter

is entirely consistent with Plaintiff's allegations. In addition, I am reminded that *pro se* civil

rights complaints are to be liberally construed, and interpreted "to raise the strongest arguments

that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) [citation omitted].

And, frankly, I believe that the letter in question inures to Plaintiff's benefit more than it works to

his detriment, for a variety of reasons. As a result, for the purposes of Defendants' motion, I will

liberally construe Plaintiff's Complaint as incorporating by reference the statements made in his

letter dated September 18, 2006, to Sergeant Scott about the "lost and/or stolen property" at issue

in this action. (Dkt. No. 6, Part 3, Ex. D [Rhodes Affid.].)

However, even with the benefit of this letter, Defendants' exhaustion argument, when it is

evaluated within the confines of a Rule 12(b)(6) analysis, lacks facial merit. This is because, for

---

[25]      *Cf. San LeandroEmergency Med. Group*, 75 F.3d at 808 (considering document
because it was "integral" to the complaint and the complaint contained quotations from the
document); *Harsco Corp.*, 91 F.3d at 341, n.1 (considering letter because it was "cited to and
described in the complaint").

14

some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's

fulfillment of his duty to exhaust his administrative remedies under the Prison Litigation Reform

Act ("PLRA") is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C.

§ 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as

on a motion for summary judgment) established by the PLRA.  *See, e.g., Jenkins v. Haubert*, 179

F.3d 19, 28-29 (2d Cir. 1999).  Recently, the Supreme Court upheld this interpretation of the

exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits)

from using exhaustion as a heightened pleading requirement in prisoner civil rights case.  *See*

*Jones v. Block*, 127 S. Ct. 910, 914-915, 918-923 (2007).  "[T]his is not to say that failure to

exhaust cannot be a basis for dismissal for failure to state a claim."  *Block*, 127 S. Ct. at 921.

Rather, it means that a prisoner has no duty to plead facts plausibly suggesting that he exhausted

his administrative remedies.  If he chooses to plead facts regarding exhaustion, however, his

Complaint may be dismissed for failure to state a claim if "the allegations in the complaint [taken

as true] suffice to establish that [the prisoner failed to exhaust his administrative remedies]."  *Id.*

Here, the allegations in Plaintiff's Complaint, taken as true, simply do not suffice to

establish that he failed to exhaust his administrative remedies.  Defendants are certainly correct

that, in Plaintiff's Complaint, in response to the question "Is there a prisoner grievance procedure

at this facility," Plaintiff responded "Yes."  (Dkt. No. 1, ¶ 4[a].)  Defendants are also correct that,

in response to the question "If your answer to 4(a) is YES, did you present the facts relating to

your complaint in this grievance program," Plaintiff responded "No."  (*Id.* at ¶ 4[b].)  However,

in Plaintiff's response to the next question, Plaintiff plausibly suggests that he was interpreting

the words "this facility" in the previous questions as referring to his current facility at the time of

the signing of his Complaint (i.e., Auburn Correctional Facility), not to the facility at which the alleged constitutional violations occurred (i.e., Tioga County Jail).[26]  As a result, none of Plaintiff's allegations, taken as true, appear to say *anything at all* about what formal grievance procedures he did or did not avail himself of at Tioga County Jail.

In any event, Plaintiff has alleged facts plausibly suggesting that he was excused from exhausting his administrative remedies under the circumstances.  The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements."  *Id*. (citations and internal quotations omitted).

Here, Plaintiff has alleged facts plausibly suggesting that Defendants are estopped from

---

[26]     Specifically, in response to the question "Why did you choose to not present the facts relating to your complaint in the prison's grievance program," Plaintiff responded, "The facts of the complaint do not matter in my current facility."  (Dkt. No. 1, ¶ 4[b].)

asserting exhaustion as an affirmative defense since Defendant Monell threatened Plaintiff's life, and threatened to file criminal charges against Plaintiff, in response to Plaintiff's complaints to Defendants and "a third party" (apparently Sergeant Scott) about Defendants' having "lost" or "stolen" his jewelry, and the other Defendants "helped" Defendant Monell to do so.  (*Id*. at ¶¶ 6-7, 9.)  Moreover, Plaintiff has alleged facts plausibly suggesting that "special circumstances" exist in that (1) he tried to informally exhaust his administrate remedies at Tioga County Jail, but stopped because he was frustrated from doing so by Defendants, and (2) he did not try to grieve the issue once he was transferred from Tioga County Jail to Auburn Correctional Facility because he was laboring under the misunderstanding that he could no longer avail himself of his administrative remedies at Tioga County Jail and that Auburn Correctional Facility was not the proper forum at which to avail himself of his administrative remedies.  (Dkt. No. 1, ¶¶ 4[b], 6-7.) Whether Plaintiff would be able to adduce any evidence of such estoppel or special circumstances sufficient to create an issue of fact on a motion for summary judgment is another question, which I need not, and do not, decide here.

For these reasons, I recommend that the Court reject as facially unmerited Defendants' exhaustion argument.

### B.      Plaintiff's Allegations of Threats

In their memorandum of law, Defendants assume that Plaintiff is attempting to assert, in part, some sort of independent claim of a "threat" against Defendants.  (Dkt. No. 6, Part 4 at 3-4.) As an initial matter, Defendants do not describe the precise nature of the claim to which they are referring, for example, whether it is a claim for the tort of intentional infliction of emotional distress, the tort of assault, etc.  Furthermore, even liberally construing Plaintiff's Complaint, I

have trouble discerning such a claim.  Plaintiff never uses the words "emotional distress,"

"mental or emotional injury," or "state law claim" in his Complaint.  (*See* Dkt. No. 1, ¶¶ 6-7, 9.)

Rather, I liberally construe Plaintiff's allegations of threats to be *inextricably tied* to his

allegations of his attempts to exercise his right to "petition the Government for a redress of

grievances," as articulated by the First Amendment.[27]  Plainly stated, Plaintiff appears to be

alleging that Defendants threatened him in retaliation for exercising his First Amendment right to

complain.

     In any event, assuming Plaintiff is attempting to assert such a claim, Defendants are

indeed correct that, under the PLRA, any such claim by Plaintiff, to the extent that it is one "for

mental or emotional injury," would be precluded by the PLRA, absent a "prior showing of

physical injury."  (*Id*.)

     For these reasons, I accept as facially merited Defendants' argument that any independent

state law claim by Plaintiff based on tortious threats by Defendants must be dismissed.

     With regard to Plaintiff's First Amendment retaliation claim, Defendants argue, in their

memorandum of law, that Plaintiff does not state a viable claim since he does not allege that

Defendants actually took any "adverse action" against him.  (*Id*. at 4.)  More specifically, they

argue that (1) the property deprivation does not constitute such "adverse action" since it occurred

---

     [27]    For example, when Plaintiff alleges that "[D]efendent [Monell] has threatened my
life as well as [threatening me] with [the filing of] criminal charges," he makes that allegation
immediately after alleging that "[Defendant] Monell has violated my Constitutional First Amend.
rights to freedom of speech and of self expression."  (Dkt. No. 1, ¶ 6.)  Thus, the allegation of a
threat would appear to be an explanation of *how* Defendant Monell violated Plaintiff's First
Amendment right.  This interpretation of Plaintiff's theory of liability is confirmed by his later
allegation that "I had my life threatened and had criminal charges threatened for writting [sic] to
a third party [about the deprivation of my property]."  (*Id*. at ¶ 7.)

before his exercise of his First Amendment right, and (2) the alleged threats do not constitute

such "adverse action" since the threats did not actually result in physical harm or physical injury.

(*Id*.)  While Defendants are correct in making their first point, they are clearly incorrect in

making their second point.

This is because it is clearly established that, for threats to constitute "adverse action" for

purposes of a First Amendment retaliation claim, the threats need not have been actually

executed, or cause any actual physical harm or physical injury to a prisoner.  Rather, all that is

required is that the threat was of such a nature as to "deter[] a reasonable inmate [from

complaining]," or more specifically, to "deter a similarly situated individual of ordinary firmness

from exercising . . . constitutional rights."[28]  Here, I find that the allegations of Plaintiff's

Complaint, taken as true, plausibly suggest that the threats would have deterred a similarly

situated prisoner of ordinary firmness from exercising his First Amendment right to complain

about the alleged property deprivation.  In particular, Plaintiff alleges that the threats included a

threat against his life.  (Dkt. No. 1, ¶¶ 6, 7 ["[D]efendant [Monell] has threatened my life. . . .  I

had my life threatened . . . ."].)  Plaintiff also alleges that the threats included a threat to file

"criminal charges" against him.  (*Id*.)  Death threats may constitute "adverse action."[29]  Indeed,

even unfulfilled threats of disciplinary charges may constitute "adverse action."[30]  Again, whether

---

[28]     *Gill v. Pidlypchak*, 389 F.3d 379, 381-382 (2d Cir. 2004) (Scullin, J., sitting by designation) [internal quotation marks and citations omitted].

[29]     *See, e.g., Hepworth v. Suffolk County*, 02-CV-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) ("continued verbal threats" that inmate "would receive another beating or be killed").

[30]     *See, e.g., Gill v. Tuttle*, 93 F. App'x 301, 303 (2d Cir. 2004) (threat to "keep filing misbehavior reports" against plaintiff).

Plaintiff would be able to adduce any evidence of such threats sufficient to create an issue of fact

on a motion for summary judgment is another question, which I need not, and do not, decide

here.

For these reasons, I recommend that the Court (1) dismiss any independent state law tort

claim by Plaintiff arising out of Defendants' alleged threats against him, and (2) reject as facially

unmerited Defendants' argument with regard to Plaintiff's First Amendment retaliation claim.

### C.      Plaintiff's Allegations of a Property Deprivation

To the extent that Defendants argue that Plaintiff's claim of negligent loss of property

should be dismissed because negligence is not actionable under 42 U.S.C. § 1983, I agree.  (Dkt.

No. 6, Part 4, at 5.)  Even liberally construing Plaintiff's Complaint, I read it as asserting such a

fatal claim of negligence.  (Dkt. No. 1, ¶¶ 6, 9 [Plf.'s Compl., alleging that Defendants failed to

"log[] [the taking of his jewelry] into their property log," and that his jewelry was "lost" or

"stolen"].)  "[M]ere negligence will not support a section 1983 claim."[31]

To the extent that Defendants argue that Plaintiff's claim of property deprivation should

be dismissed because he has failed to allege facts plausibly suggesting that Defendants were

---

[31]      *Burgess v. County of Rensselaer*, 03-CV-0652, 2006 U.S. Dist. LEXIS 91521, at
*26 (N.D.N.Y. Dec. 14, 2006) (McCurn, J.) [citation omitted]; *see also Estelle v. Gamble*, 429
U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating
a medical condition does not state a valid claim of medical mistreatment under the Eighth
Amendment.  Medical malpractice does not become a constitutional violation merely because the
victim is a prisoner."); *Pena v. Deprisco*, 432 F.3d 98, 112 (2d Cir. 2005) ("In order to establish
a violation of a right to substantive due process, a plaintiff must demonstrate not only
government action but also that the government action was 'so egregious, so outrageous, that it
may fairly be said to shock the contemporary conscience.' . . . [T]he Fourteenth Amendment is
not a 'font of tort law.' . . .   It does not provide a comprehensive scheme for determining the
propriety of official conduct or render all official misconduct actionable. . . .  '[N]egligently
inflicted harm is categorically beneath the threshold of constitutional due process.'") [citations
omitted].

personally involved in the deprivation, I reject that argument.  (Dkt. No. 6, Part 4, at 5.)  Plaintiff

has alleged that "C.O. Howe and Sgt. [Marsh] have helped Lt. Monell to unlawfully deprive me

of my personal property in violation of the 14th Amend. of the U.S. Constitution.  The

defendants unlawfully took close to $1,500.00$ [sic] worth of jewelry upon [my] admittenced

[sic] to there [sic] facility and never returned them [sic].  In fact they [sic] never got logged into

their property log."  (Dkt. No. 1, ¶ 6.)  Plaintiff has further alleged that he made "several

request[s]" to Defendants for the replacement of, or reimbursement for, his jewelry, and that

Defendants denied those requests, and indeed, threatened him in response to those requests.  (*Id*.

at ¶ 7.)  Liberally construed, these allegations plausibly suggest that Defendants were personally

involved in the deprivation at issue.  Again, whether Plaintiff would be able to adduce any

evidence of such personal involvement to create an issue of fact on a motion for summary

judgment is another question.

Finally, to the extent that Defendants argue that Plaintiff's claim of property deprivation

should be dismissed because he has failed to allege facts plausibly suggesting that Defendants

intentionally stole (or "converted") his property, I reject that argument as well.  (Dkt. No. 6, Part

4, at 5.)  Plaintiff expressly characterizes his jewelry as "stolen" in his Complaint, as he does in

his letter of September 18, 2006, to Sergeant Scott, which Defendants implicitly ask the Court to

deem as incorporated into that Complaint by reference.  (Dkt. No. 1, ¶ 9; Dkt. No. 6, Part 3, at

24.)  Moreover, Plaintiff alleged that (1) "defendants unlawfully" took the jewelry, (2) "never . . .

logged [the jewelry] into their property log," and (3) "helped" each other to deprive Plaintiff of

the jewelry, and (4) threatened Plaintiff when he complained about the jewelry.  (*Id*. at ¶¶ 6-7.)

Liberally construed, these allegations plausibly suggest that Defendants intentionally stole his

property.  Again, whether Plaintiff would be able to adduce any evidence of such a theft to create

an issue of fact on a motion for summary judgment is another question.

For these reasons, I recommend that the Court (1) dismiss Plaintiff's claim of negligent

loss of property, and (2) reject as facially unmerited Defendants' arguments regarding Plaintiff's

allegations of personal involvement and property theft.

### D.    Statute of Limitations

Defendants argue that any claims that Plaintiff is attempting to assert against Defendants

under New York State law are barred by the applicable statute of limitations, set forth in New

York General Municipal Law §§ 50-e, 50-i.

To the extent that Defendants argue that any independent state law claim by Plaintiff

based on Defendants' alleged threats is barred by the applicable statute of limitations, such an

argument is moot.  As stated above, even liberally construing Plaintiff's Complaint, I have

trouble discerning, in that Complaint, any independent state law claim based on Defendants'

alleged threats, such as a claim sounding in tort for intentional infliction of emotional distress or

assault.  *See*, *supra*, Part III.B. of this Report-Recommendation.  As a result, I have already

recommended that such attempted claim by Plaintiff be dismissed because (1) it does not allege

facts plausibly suggesting that such a tort occurred, and (2) any such claim would be precluded

by the PLRA's "prior showing of physical injury" requirement.

Incidentally, I note that the limitations period governing civil rights claims brought in

New York and asserted under 42 U.S.C. § 1983 (including Plaintiff's First Amendment

retaliation claim, which involves an allegation of various threats made against him) is three years,

absent evidence of a continuing violation or grounds for equitable tolling.  *See Patterson v.*

*County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).[32]

To the extent that Defendants argue that any independent state law tort claims by Plaintiff for (1) misappropriation (or "conversion") of property and (2) negligent loss of property should be dismissed as untimely, it appears that Defendants are correct that the limitations period governing those state law tort claims would be the period set forth in New York General Municipal Law §§ 50-e, 50-i.[33]   *See White v. City of Mount Vernon*, 633 N.Y.S.2d 369, 370 (N.Y. App. Div., 2d Dept., 1995); *Schwinghammer v. Sullivan W. Cent. Sch. Dist.*, 768 N.Y.S.2d 696, 696-697 (N.Y. App. Div., 3d Dept., 2003); *Bliss v. Vill. of Arcade*, 761 N.Y.S.2d 573, 573 (N.Y. App. Div., 4th Dept., 2003).  However, Defendants' statute-of-limitations argument with regard to these two state law tort claims contains a fatal flaw that I cannot ignore.

Because Defendants advance this statute-of-limitations argument through a Rule 12(b)(6) motion to dismiss, I am confined to the four corners of Plaintiff's Complaint for the answer to the

---

[32]      *See also Wilson v. Garcia*, 471 U.S. 261, 266-268 (1985); 42 U.S.C. § 1988; N.Y. C.P.L.R. § 214(5) (personal injury statute of limitations).

[33]      I note that I have *some* trouble construing Plaintiff's Complaint as intending to assert an independent state law claim of tortious conversion or negligence.  Plaintiff never uses the words "conversion" or "state law claim" in his Complaint.  (*See* Dkt. No. 1, ¶¶ 6-7, 9.)  Nor does he use the words "negligence" or "careless."  (*Id*.)  Nor does he mention his loss of property without appearing to inextricably tie that loss to his Fourteenth Amendment deprivation-of-property claim.  (*See, e.g.,* at ¶ 6 ["C.O. Howe and Sgt. [Marsh] helped Lt. Monell to unlawfully deprive me of my personal property *in violation of the 14th Amend. of the U.S. Constitution*."] [emphasis added], *accord*, *id*. at ¶ 7, "Second Cause of Action," "Third Cause of Action.")  However, I am reminded that I must liberally construe Plaintiff's Complaint "to raise the strongest arguments that they suggest."  *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).  As a result, I will liberally construe Plaintiff's Complaint as intending to assert these two state law tort claims.

question of whether Plaintiff complied with the relevant limitations period.  Based on the

allegations contained in Plaintiff's Complaint (and Plaintiff's letter of September 18, 2006, to

Sergeant Scott, which, as explained above, I have deemed as incorporated into Plaintiff's

Complaint by reference), it is unclear to me that the date of the incident giving rise to such a

claim is in fact November of 2004.  (Dkt. No. 6, Part 4, at 6; Dkt. No. 6, Part 3, at 24.)  For

example, if Defendants took Plaintiff's jewelry with the intent to convert it upon his admission to

the Jail, then the elements of the tort of conversion were complete in November of 2004;

however, if Defendants did not take Plaintiff's jewelry with the intent to convert it upon his

admission to the Jail, but formed that intent at some later date (such as when Plaintiff was next

discharged from the Jail and/or demanded the jewelry's return), then the elements of the tort were

not complete until that later date, whenever that date was.[34]  Due to the lack of specificity in

Plaintiff's Complaint, we do not know when he is alleging that intent was formed.[35]  (Nor is it

likely that the parties will have any evidence of such a fact without the benefit of discovery.)

   More important, we do not know, based solely on the allegations of Plaintiff's Complaint,

whether he in fact complied with New York General Municipal Law §§ 50-e, 50-i.  Granted,

Defendants have adduced evidence that Plaintiff never filed a notice of claim within 90 days after

---

[34]    *See White v. City of Mount Vernon*, 633 N.Y.S.2d 369, 370 (N.Y. App. Div., 2d
Dept., 1995).

[35]    I note that Plaintiff had no duty to plead that particular detail in order to state a
claim.  As with the failure to exhaust one's administrative remedies, a failure to comply with the
applicable statute of limitations is an affirmative defense, which a defendant must prove and
which a plaintiff need not plead.  *See* Fed. R. Civ. P. 8(c); *Jones v. Block*, 127 S. Ct. 910, 920-
921 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of
limitations, the complaint is subject to dismissal for failure to state a claim; [but] that does not
make the statute of limitations any less an affirmative defense . . . .").

the claim arose, as required by New York General Municipal Law § 50-e.  (Dkt. No. 6, Part 3, ¶¶ 8, 10 [Rhodes Affid.].)  However, as explained above, consideration of such evidence would convert Defendants' motion to dismiss to a motion for summary judgment.  And such a conversion would be improper since Plaintiff has not been given the required notice of such a conversion of Defendants' motion, nor has he been given an opportunity to present evidence to create a question of fact on the issue (nor has he even been given an attempt to conduct discovery on the issue).  For example, on a properly filed motion for summary judgment, Plaintiff might conceivably be able to adduce evidence that (1) he did in fact file, or diligently attempt to file, such a notice of claim, and/or (2) he was prevented by Defendants from filing such a notice of claim due to their threats against him.

Of course, the Court has the discretion to not exercise jurisdiction over any such pendent state law claims, under the principles of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  However, I believe that such a decision is best left for a later time, after Defendants' inevitable motion for summary judgment has been decided, and it has been determined whether any federal civil rights claims exist to which state law claims may be appended.

For these reasons, I recommend that the Court reject as facially unmerited Defendants' statute-of-limitations argument.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 6) be **<u>GRANTED in part,</u>** insofar as that motion requests the dismissal of (1) any independent state law tort claim by

Plaintiff arising out of Defendants' alleged threats against him, and (2) any federal civil rights claim by Plaintiff alleging negligent loss of property by Defendants, but that the motion be **otherwise <u>DENIED</u>**; and it is further

      **ORDERED** that the Clerk's Office shall change Plaintiff's address of record in this action from Auburn Correctional Facility to Southport Correctional Facility (as requested by him in Dkt. No. 9, Part 2).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 10, 2007
      Syracuse, New York

                        George H. Lowe
                        United States Magistrate Judge